## IN THE MATTER OF FOUR MILE LAKE

### WASHTENAW COUNTY BOARD OF COMMISSIONERS v DEPARTMENT OF NATURAL RESOURCES

Docket No. 76606. Submitted January 14, 1986, at Lansing.—Decided April 7, 1986.

The Washtenaw County Board of Commissioners petitioned the Washtenaw Circuit Court for a determination of the normal height and level of the water in Four Mile Lake pursuant to the Inland Lake Level Act. The Department of Natural Resources, Ernest Girbach and 10 other property owners, most of whom were farmers with land served by Dexter Drain No. 3, intervened. The circuit court, William F. Ager, J., adopted a proposal by the Washtenaw County Drain Commissioner and ordered that the lake level be set at 887 feet above sea level and that the drain commissioner may install a mechanical pump to force the water out of Dexter Drain No. 3, take all other necessary steps to prevent flooding of adjoining farmland or to keep the lake at the aforementioned level, and charge any costs of construction, installation, operation and maintenance thereof to the Four Mile Lake Level Special Assessment District. The Department of Natural Resources appealed. *Held:*

1. The Legislature, in adopting the Inland Lake Level Act, intended to give a trial court wide discretion when establishing the water level and to allow it to weigh the competing interests of the parties affected and the interests of the public. In this case, the trial court weighed the various competing interests and concluded that a water level of 887 feet would provide the most benefit to the public, would best protect the public health, welfare and safety, and would best conserve the natural re-sources of the state.

2. The Court of Appeals narrowed the scope of the trial court's order by holding that costs incurred to prevent flooding

REFERENCES

Am Jur 2d, Waters §§ 10-14, 44, 55, 58, 205, 209.

Liability for overflow of water confined or diverted for public water power purposes. 91 ALR3d 1065.

See also the annotations in the ALR3d/4th Quick Index under Lakes; Waters and Watercourses.

conditions caused by the lake's high water level may be assessed against the special assessment district, while costs incurred to correct the slope of Dexter Drain No. 3 may not.

Affirmed, but order modified.

1. WATER AND WATERCOURSES — INLAND LAKE LEVEL ACT — LAKE LEVEL DETERMINATION — COURTS.

A trial court, when determining the normal height and level of a lake, may consider the following: the height established by government surveys, the testimony of old inhabitants, the extent to which drainage and other artificial causes have decreased the natural groundwater table of the area, the extent to which natural causes have affected the natural ground water table, and all other pertinent surrounding facts and circumstances (MCL 281.61[a]; MSA 11.300[2][a]).

2. WATER AND WATERCOURSES — INLAND LAKE LEVEL ACT — NORMAL LAKE LEVEL.

A determination of a lake's normal level under the Inland Lake Level Act should be that which provides the most benefit to the public, best protects the public health, welfare and safety, best preserves the natural resources of the state, and that which preserves and protects the values of properties developed around the lake as a result of the creation of the normal level (MCL 281.62[a]; MSA 11.300[2][a]).

*Washtenaw County Corporation Counsel* by *Harris, Lax Guenzel & Dew* (by *Robert E. Guenzel*), for Washtenaw County Board of Commissioners.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Thomas J. Emery* and *Gary L. Hicks,* Assistants Attorney General, for the Department of Natural Resources.

*Keusch & Flintoft, P.C.* (by *Peter C. Flintoft* and *Diana R. Newman*), for Ernest Girback and others.

Before: GRIBBS, P.J., and D. E. HOLBROOK, JR., and T. ROUMELL,* JJ.

T. ROUMELL, J. Intervenor, the Department of

* Circuit judge, sitting on the Court of Appeals by assignment.

Natural Resources, appeals as of right from a January 30, 1984, order of the Washtenaw County Circuit Court. We affirm.

Pursuant to the Inland Lake Level Act of 1961, MCL 281.61 *et seq.;* MSA 11.300(1) *et seq.,* (act), the order established the legal level of Four Mile Lake at 887 feet above the United States Coast and Geodetic Survey sea level datum of 1929 and confirmed the boundaries of a special assessment district.

The order further provided:

"IT IS FURTHER ORDERED that the Washtenaw County Drain Commissioner may install a pump at the existing terminus of Dexter No. 3 Drain and/or take all other necessary steps to prevent flooding of adjoining farmland or to keep the lake at the aforementioned level and the costs of construction, installation, operation and maintenance thereof may be charged to the Four Mile Lake Level Special Assessment District."

On appeal the DNR claims that the trial court acted without statutory authority when it made the preceding order.

Four Mile Lake is an egg-shaped body of water which is very shallow. At the northeast corner, Dexter Drain No. 3 empties into the lake. The drain serves farms located to the north and northeast of the lake. At the south end of the lake is an outlet drain. Although there was testimony at trial that the DNR owned 90% of the land surrounding the lake, a map provided by the DNR suggests that it owns less than 90% of the shoreline.

On January 14, 1982, the Washtenaw County Board of Commissioners petitioned the circuit court for a determination of the normal height and level of the water of this lake. In addition to the DNR, eleven property owners, most of whom were farmers with land served by Dexter Drain

No. 3, intervened. Testimony centered around five central issues: (1) the ecological effect of a lake level lower than 887 feet; (2) whether the drainage problems of Dexter Drain No. 3 were the result of the lake's high water level or of the drain's design; (3) the period of time during which the farmers had experienced drain problems; (4) whether the outlet drain on the south end of the lake was clogged; and (5) the historic level of the lake. During the course of these proceedings, the level of the lake was measured four times and was found to fluctuate between 887.3 and 887.58 feet. Throughout this proceeding, the parties referred to the "current level" as 887.5 feet. At that level, the outlet to Dexter Drain No. 3 was underwater, causing water to back up with the result that the drain functioned only minimally, if at all.

The DNR took the position that a high lake level is best for fish and wildlife and sought to preserve the marshlands lying primarily to the west of the lake. The DNR was willing to settle for a level of 887 feet above sea level, but would have preferred a higher limit. The intervening farmers contended that the high water level was responsible for turning several acres of once rich farm land into land too wet to be cultivated. The farmers contended that a lake level of 885.5 feet would expose the outlet of Dexter Drain No. 3, would allow it to again function, and would dry out their land.

As a compromise between the farmers' position and the DNR's position, the Washtenaw County Drain Commissioner proposed setting the Lake level at 887 feet and installing a pump to force the water out of Dexter Drain No. 3. He proposed the establishment of a special assessment district to finance the pump. The proposed district included only owners of lake front property, primarily the

DNR and two of the eleven intervenors. The proposed location of the pump was just outside the special assessment district on the east side of Lima Center Road.

The farmers preferred a gravity-flow drainage system (*i.e.*, a lake level of 885.5 feet), because they feared that a mechanical system might break down, resulting in the flooding of planted crops. However, they were willing to accept the proposed compromise. The DNR was willing to accept 887 feet as a lake level, but did not feel that it should have to pay for the pump.

The preamble of the Inland Lake Level Act expresses the legislative intent of this enactment as follows:

"AN ACT *to provide for the determination and maintenance of the normal height and level of the waters in inland lakes of this state for the protection of public health, safety and welfare and the conservation of the natural resources of this state;* to authorize the building and maintenance of dams and embankments to accomplish such purposes; to authorize the acquisition of lands and other property by gift, grant, purchase or condemnation proceedings; to authorize the acceptance of gifts and grants of funds for the construction and maintenance of such dams and embankments; *to authorize the raising of money by taxation and by special assessments for the purposes of this act;* to prescribe the duties and powers of boards of supervisors, the conservation department of Michigan and the county drain commissioners with reference hereto; and to repeal certain acts and parts of acts." (Emphasis added.)

One of the purposes of the act is to determine the water level of inland lakes for the conservation of natural resources. Agricultural land is a natural resource to be conserved. The act authorizes the raising of money by special assessment to support that purpose. Although the statute may

not expressly authorize the relief fashioned by the trial court, the lower court's action comes within the spirit and purpose of the act.

We note that § 2(a) of the act lists several factors for the trial court to consider when determining the normal height and level of a lake. These factors include the height established by government surveys, the high water line as disclosed by old surveys, the testimony of old inhabitants, the extent to which drainage and other artificial causes have decreased the natural groundwater table of the areas, the extent to which natural causes have affected the natural groundwater table, and all other pertinent surrounding facts an circumstances. That provision further defines normal water level as that which "will provide the most benefit to the public and best protect the public health, welfare, and safety and which will best preserve the natural resources of the state, and preserve and protect the values of properties developed around the lake as a result of the creation of the normal level".

From the language of the preamble and § 2(a), we conclude that the Legislature intended to give a trial court wide discretion when establishing the water level and to allow it to weigh the competing interests of the parties affected and the interests of the public. In this case, the trial court weighed the various competing interests and concluded that a water level of 887 feet would provide the most benefit to the public, would best protect the public health, welfare and safety, and would best conserve the natural resources of the state. A water level of 887 feet would preserve the marsh lands at the west side of the lake and would be best for fish and wildlife, thus satisfying the DNR. At the same time, that water level would continue to present drainage problems for the intervening

farmers. The trial court could properly authorize the drain commissioner to install a pump and have it financed by the Four Mile Lake Level Special Assessment District in order to conserve the nearby agricultural lands. This action was proper notwithstanding the drain commissioner's testimony that the pump could have been installed as a drain project and the cost assessed to the owners of the property it served in the drainage district. The record contains substantial evidence that the problems of Dexter Drain No. 3 were predominately related to the high water level (*i.e.,* 887 feet) of the lake.

Although we affirm the order, we narrow its scope. The trial court's order authorized the drain commissioner to "take all other necessary steps to prevent flooding of adjoining farm land" and to assess those costs against the special assessment district. Costs incurred to prevent *flooding conditions caused by* the lake's high water level may be assessed against the special assessment district. Costs to correct the slope of Dexter Drain No. 3, including the slope of the culvert under Lima Center Road, should not be permitted. There was no evidence that these defects were in any way related to the water level of the lake. There was testimony that the buildup of silt in Dexter Drain No. 3 was caused by the water level, and we believe that costs to remove the silt buildup could be assessed against the special assessment district. Therefore, we modify the language of the lower court's order to read as follows:

It is further ordered that the Washtenaw County Drain Commissioner may install a pump at the existing terminus of Dexter No. 3 Drain and/or take all other preventative steps, necessitated by the normal water level, to prevent flooding of adjoining farm land or to keep the lake at

the aforementioned level and the costs of construction, installation, operation and maintenance thereof may be charged to the Four Mile Lake Level Special Assessment District.

The order of the lower court is affirmed except as otherwise modified by this opinion.